Good morning. My name is Matthew Dietz and I represent the appellant, Anthony Deberry. I will focus my argument this morning on the issues pertaining to the burden of proof on the justification defense, and unless the court has questions, I'll rest on our briefing with respect to the guidelines issues. The district court committed reversible error when it instructed the jury that it was Mr. Deberry's burden to prove justification by a preponderance of the evidence. Given the particular facts of the case, Mr. Deberry had requested the government be required to disprove justification beyond a reasonable doubt. This is based on due process and federal common law. Before I get much further, though, I have to address the government's opening argument in this court, where for the first time on appeal, the government argues that justification can never be a defense to felon in possession charge under 18 U.S.C. 922G. Not only is this contrary to the government's position in the district court, where the government agreed that the district court could instruct the jury on justification, it's also contrary to the case law of every circuit court that has directly addressed this issue. No, we haven't, though. Is that correct? That's correct, Your Honor, and that's part of the government's argument. While every circuit court that has addressed this argument have unanimously agreed that justification is available in the context of 922G, the First Circuit, even in United States v. Leahy in 2007, noted that the circuits, quote, have not hesitated to recognize justification in the correct context. And that's where the defendant makes an offer of proof that if accepted by the jury would be sufficient to sustain the defense, the instruction should be given. And that's an interesting question. Is there really any evidence here that would suggest that the defense is available, since it does appear that Mr. DeBerry was the initial aggressor, right? And that, you know, the video shows Mr. DeBerry going off looking for these people, creating a confrontation. You have a duty to flee under Minnesota laws. They don't have a castle doctrine that operates outside of the residence. So, I mean, you know, you have a duty to flee if you can, and the video sort of makes claim that he was the initial aggressor and he did not flee. So, is it really available? Your Honor, it is available. Just as the district court found and the government agree, Mr. DeBerry's proffer pretrial satisfied each element of the justification defense that this Court outlined in United States v. Stover in 1987. The initial, the issue of who was the initial person to start out this event is a question of self-defense, which is usually under state law. Here we are dealing with the four elements that this Court outlined in Stover, which deal with justification. Well, element two of the Stover formulation involves whether the defendant was reckless or negligent in placing himself in a position where he had to commit the crime. The initial provoking event is not necessarily required by this Court in Stover. And I believe Your Honor's question also goes to credibility determinations. Most of the events that, the crucial events in this case took place off camera. And while witnesses testified contrary to each other about what happened off camera, Mr. DeBerry's offer of proof, his trial testimony was sufficient to meet those four factors under Stover, which the district court found and even the government agreed. Now, the issue really is which party bore the burden of persuasion on justification. And here the Supreme Court has given us three principles to consider when analyzing this proceeding. First, we know that due process requires that government prove all essential elements of the crime beyond a reasonable doubt. This also means that due process prevents the Court from shifting the burden of proof on the defendant when a defense negates or controverts an element of the offense. And what, where is the contravention here specifically? So Mr. DeBerry testified at trial. He explained to the jury his version of events. He stipulated to his status as a felon, and he even agreed that he knew as such. He even agreed that the government's evidence, the video, shows that he was carrying the firearm for a period of time. But he asserted that in the face of another person pulling the charged firearm and shooting it through his hand, he grabbed the firearm to protect his life. What element of the offense does that contravene or conflict with? This controverts the essential element of knowing possession. Well, there, how does it, I mean, there's no allegation that he didn't know he was taking the gun, right? He testified that this was a life or death situation. That's not knowledge, though, right? Because there's no allegation he took it unknowingly. That's the part that I struggle with. I get the concept, but when you've got this sort of felon in possession statute, as opposed to an assault or something along those lines, I just don't see how the knowing possession of the firearm is brought into question here. We all know he took it knowingly. He just says he took it for a different reason. Your Honor, the word knowing requires proof of the knowledge of facts that constitute the offense. As the Supreme Court recognized in 1921, detached reflection cannot be demanded in the presence of an upturned knife. Mr. DeBerry was facing a life or death, heat of passion situation where he was being shot through the hand while other assailants were also shooting a bullet through his neck and through his thigh. All of this happened in seconds and he dropped the gun behind a car once, you know, the police arrived, which was basically within seconds of all this happening. This was a spur of the moment situation where reflective decision making cannot be demanded. Do you have a case that's on similar facts? Was that the one you just cited? I mean, what's your best analogous case? The best case about the controverting, the essential element of knowing is that Supreme Court case, Brown v. United States, 1921. And this trial testimony that Mr. DeBerry offered is what distinguishes this case from Dixon and really from every other circuit court that has analyzed this issue. For example, in Dixon, which is the Supreme Court case from 2006 on duress defense in the context of possession of a firearm event, the defendant argued she did not freely purchase or possess the charged firearm because she felt threatened by her boyfriend to do so. But she testified at trial that she knowingly committed the charged conduct. The issue was duress. She thought that her boyfriend was threatening her to buy these firearms, but she said, I knowingly bought the firearms. I knowingly filled out the ATF form. And so that's how Dixon is different. Same with other circuit court cases that have well decided that justification does apply in this context. They said that it should be the defendant's burden to prove justification by a preponderance because in each of those cases, the specific facts of the case did not controvert the essential element of knowing. So your best case is a 103-year-old case from the United States Supreme Court that talks about this issue as you've framed it somewhat tangentially? Your Honor, yes. I mean, that 1921 case stands for the proposition that in this heat of the moment, this is true. It stands for the proposition that you don't have a duty to flee if you're being attacked and you're not the initial aggressor. Isn't that what it stands for? Have I just misread Brown? I mean, I've got to tell you, I didn't really study it that closely. Well, Brown involved self-defense to a murder charge. Right. And it involved the duty to flee. The duty to retreat, I guess. Part of it was when it was dealing with self-defense. But here, we don't have that as an element set out by this court in Stover. This principle is also from Dixon itself, where Dixon actually analyzed the specific facts of the case, analyzed the specific assertions that the defendant made as part of her defense to decide whether those assertions, if accepted by the jury, would actually controvert an essential element. At the bottom, though, Mr. DeBerry's defense was really self-defense. And federal common law teaches us that self-defense is different. It generally requires the government to disprove self-defense beyond a reasonable doubt. In United States v. Holladay, the First Circuit in 2006 explained that where a defendant charged with felon in possession testifies he had to seize the firearm, which is an act of force, to avoid imminent danger of his own death, this is the classic self-defense scenario. Likewise, in U.S. v. Panter, the Fifth Circuit in 1982 said that where a convicted felon reacting out of a reasonable fear for his life takes temporary possession of a firearm to protect himself. What wasn't Dixon a duress case? And didn't the court say that in duress it doesn't negate the element of knowingly? And isn't that instructive here? And if not, why not? You're correct, Your Honor, that that's what Dixon said. And that's where the court's analysis of what the defendant actually testified to when she was asserting her duress defense. She testified that she knowingly committed the charged acts. And so right off the bat, her defense did not controvert that essential element of knowing. Whereas here the ---- Well, but she was describing a ---- I mean, that was a factual admission, wasn't it? I mean, was it an ---- or was it the same thing as a legal admission that she conceded the element of the offense? I mean, because I think it could be said that your client conceded knowledge, right? Not the element, I mean, from a factual perspective. He's not saying he did this unknowingly. You're just arguing it didn't reach the legal standard, right? Your Honor, the ---- My suggestion is it's more similar to Dixon than you might suggest. Dixon is quite a bit different. The Dixon defendant traveled with her boyfriend to two different gun shows. He pointed out which guns she should purchase. This happened over a period of hours. This was not a heat-of-the-moment life-or-death situation where detached reasoning could be expected. Unlike Mr. DeBerry's situation, she had plenty of time to think about what she was doing. This was not a split-second life-or-death situation. I'm still struggling with the idea that it's a split-second life-or-death situation because he hunted him down, which appears to be on the video, right? I mean, he starts the altercation in the tavern. He destroys the phone. Then he goes looking for these people. Your Honor, Mr. DeBerry testified that the altercation happened earlier in the day at the bar. Then he left the bar for a period of time and returned at about 9.20 p.m. to get his girlfriend who was still at the bar. He was standing outside the patio of the bar calling for his girlfriend to come outside when these men, who he didn't know, he didn't know their names really until trial, came out. One of the men he testified said, hey, I would like a cigarette or I would like to holler at you. That led Mr. DeBerry to follow him down the sidewalk. Essentially, this man lured Mr. DeBerry to follow him down the sidewalk, and at that moment is when the shots rang out. So the government certainly argues that it's character. It's lured. I mean, he voluntarily followed. He voluntarily followed a person. I thought he had a reason, but it was certainly not lured in the sense of . . . Sure. Just as the government puts its own spin on its witness testimony, Mr. DeBerry testified about what he saw happen, what happened to him. Okay. You know, he's still the aggressor, and when he gets the gun and he's been shot in the hand taking his own testimony, then he points it and shoots. I mean, there's a lot of murder cases where it's spur of the moment from a time standpoint, but the question is, was it premeditated or voluntary or whatever? I just don't see where the element of knowingly is the admission by the admission of conduct. I don't see where that's compromised. Your Honor, what I can say about that is that 922G is not a strict liability offense. In 1986 . . . But it requires the element of knowing. Correct. And given the specific facts of this case . . . If somebody punches you and you see a gun on the ground and you pick it up and you have a . . . you know, in 30 seconds you shoot them, that's knowing. Your Honor, the Supreme Court in Francis v. Franklin said that this question about due process has to be resolved about how a reasonable jury would interpret not only the facts of the case, but also the jury instructions. And here our position is that given the split-second nature of the case, Mr. DeBerry being shot three times, a reasonable jury would interpret the situation, the jury instructions, the elements, and the facts as controverting the essential element of knowing. And for that, we ask that the Court vacate and remand. I would like to reserve the remaining time for rebuttal. Thank you. Thank you. Ms. Middlecamp. May it please the Court, Counsel. My name is Lindsay Middlecamp, and I represented the United States at Mr. DeBerry's trial in June of 2023 below. This Court can and should affirm Mr. DeBerry's conviction below without issuing a ruling on whether or not the justification defense is ever cognizable under a 922g charge. Was that conceded below? Pardon, Your Honor? Did you concede that in the district court? No, Your Honor. There is a big distinction between taking a practical approach to the issue before the district court versus conceding the availability of a defense. Here, the government noted in its motions in limine, this is not a recognized defense under the Eighth Circuit case law, which even the defense agrees in its own briefing is the case. And this Court has, in its questioning, acknowledged and settled. It has not yet been ruled on. The fact that the government then pivoted to discussing, if it were available, what instruction would set the appropriate boundaries and framework for the jury is certainly within the government's discretion to do so that when and if a case does come before this Court, we can address the real issues that are most salient to Mr. DeBerry's case. Here, the government was confident that its evidence established this entire justification concept was a fiction. Mr. DeBerry was already armed with his own gun long before the men came out of the bar before he followed them down the sidewalk. And so although we did not extensively object or object at all at the point at which we were discussing which instructions should go to the jury, that does not amount to a position by the government that this is an available defense under the law. So the real issue before this Court isn't should he or should he have not gotten this instruction because the government is not here challenging the instruction he got. Mr. DeBerry is challenging that the instruction improperly shifted the burden. So the only real issue this Court needs to resolve is that one, the burden shifting on a justification defense. Mr. DeBerry in his appeal cites certain authorities from other circuits for the idea that a justification defense is available, but fails to acknowledge that all of those circuits that have found this defense to be cognizable on a 922G charge have also found, or most of them have specifically ruled, that the defendant bears the burden by a preponderance of the evidence to establish those very elements, which is exactly what the District Court did below. Here today, Mr. Dietz has referenced the Leahy decision out of the First Circuit, and that decision is highly instructive, although not binding on this Court, in determining what type of burden shifting is appropriate on this type of defense. That defendant, just like Mr. DeBerry, tried to say this is a self-defense theory. This isn't a justification theory, and therefore, the government should have been obligated to disprove my defense beyond a reasonable doubt, as opposed to holding me to a preponderance of the evidence standard. And the Leahy Court extensively went through why that is not a distinction in the context of a 922G charge and specifically referenced the United States v. Dixon decision, which is Leahy 473F3-401 from the First Circuit. I believe so, Your Honor. Certainly has been referenced by the defense this morning. That is where the First Circuit in 2007 was faced with nearly these identical arguments and went through why it is different and why it is permissible, not only constitutionally permissible, but actually appropriate under the common law history to put the burden on the defense to prove these by a preponderance of the evidence. And that's for a few reasons. And the Dixon decision from the Supreme Court lays those reasons out as well. This Court noted that is fashioned as a duress defense. But the Leahy Court points out all of the elements that the Supreme Court in Dixon talked through are -- Now you've got to help me. I don't see it in your table of authorities. Your Honor, it is ‑‑ it may not be in our brief. I don't recall, because we were ‑‑ Well, then I need a 28J letter. Thank you, Your Honor. I will. In the defense reply brief where they start to fashion this concept that self-defense is so distinguishable from justification that it should be different, it invites us to look at other circuits on how they have addressed this issue. And Leahy is one of those decisions that is instructive. And I will file a letter with the Court citing it. They talk through the common law history. And the idea boils down to one that's very simple. If you, as a defendant, want to bring up a defense that does not go to the elements, does not seek to negate an element the government is required to prove, but somehow creates an additional context that otherwise excuses knowing illegal conduct, then you likely are the one with the most access to the evidence of that type of  Counsel suggests that the defense here does negate an element, and that is the knowing possession of the firearm. Would you address that issue? That's not clear in my mind. Certainly, Your Honor. That argument fails for two reasons. First, it's not what Mr. Deberry said below. Mr. Deberry did not testify and say, I had no idea what I was doing in that split second. The entire thing was a blur. I thought I was grabbing a cell phone. I thought I was grabbing a pen. He said, the guy pointed a gun at me. I grabbed the gun. I pointed the gun. I retreated holding the gun and pointing it. Even just the practical posture with which if he didn't know it was a gun, you wouldn't point it at your assailants and retreat, because that's the purpose of a gun is to point and potentially use it. He didn't testify that he didn't know, nor did his counsel argue in closing argument that the knowing element had not been proved because he didn't know he was holding a gun. Instead, the entire argument presented, as laid out in the instructions that were proper, is that even though he knew, even though he knew he possessed a gun and he did possess a gun, even though he was a felon and knew he was a felon, there is this other justification context that should invite the jury to acquit him nonetheless. And the instructions mirror that exactly. It sets forth the government's burden of proof. And then within that burden of proof, instruction says, even if the government meets all these, if you find he was justified, you must acquit. And then there was a separate instruction spelling out what that factor test is for a justification defense. The Dixon court also has strong analysis on that very question the court has asked, which is. And that's really the question, I think, is self-defense and justification are based on necessity. Are those defenses so intimately related to duress and similar to duress that the reasoning is necessarily the same? And, right, if you look at the Leahy court, that's exactly what they said, that they recognize that the three defenses are available, but that they are governed really by Dixon. And that means that the shifting of the burden is not problematic because it doesn't actually negate the element of knowingly, because the person is in knowing possession of the firearm. They know they have the gun. What it does, then, is it doesn't violate due process at that point to require the defendant to show, to bear the burden to a preponderance that the existence of the defense. Do I have that right? That's exactly right, Your Honor. So that's what Leahy says. And your argument is, is that that's the real analysis. And so if we're going to recognize any of these defenses, you know, duress, justification, well, I guess duress the Supreme Court says is a defense, so we have to recognize that. But if we look at justification, self-defense, and necessity, that in those defenses that the proper rubric is to say they're the same for all practical purposes as they relate to the negation of the element of knowingly. I agree with almost all of your points, Your Honor, except that the Supreme Court has affirmatively ruled duress is a cognizable defense under 922G. If I didn't say that, that's what I meant to say, that if you look at Dixon says duress is a cognizable defense. I read Dixon to instead say, essentially assume without deciding, much like Bailey assumed without deciding, that it is similar to this circuit's case law on the justification defense with regard to 922G, that it is acceptable and in many contexts appropriate to just focus on what is the framework that would apply if this defense is cognizable. But the Supreme Court did note in a separate decision that I will cite here, in United States v. Oakland Cannabis, the Supreme Court noted in 2001 that it is an open question whether Federal courts ever have authority to recognize a necessity defense not provided by statute. So while I think much of the case law does assume without deciding and then focuses on the framework, I would say Dixon should not be read quite that far. But to the Court's broader question, many courts, including this one, have looked at self-defense and justification as essentially interchangeable in the context of a 922G or similar firearm-related offense. And part of that comes from just the linguistic self-defense is a term that self-describes. If it's a fact pattern that talks about I did the thing in order to protect myself, then it is commonly referred to as self-defense. But as a term of art, the affirmative defense that can require the government to disprove beyond a reasonable doubt, self-defense, that concept of self-defense only arises in the case law. And the case law talks about how that dates back to this common law practice and concept that essentially assaultive conduct can only ever be unlawful if it's unjustified. But it also goes to the difference in mens rea requirement. And that's the Leahy case. Is that the analysis you're describing or among other places? Leahy discusses it, Your Honor. But I would point the Court to its own circuit's analysis where self-defense is applied in a manner that the government has to prove and note that they only ever arise in murder, assault, battery, things that involve force. And that stems from not only the common law uniqueness of that type of crime and concept, but also the mens rea that attaches. So if this Court compares, for instance, the murder statute, which I believe is 1,111, that requires unlawful with malice aforethought. Those are elements within that statute. That is very different than a knowing mens rea in a felon in possession case, which is as close to strict liability as you can get essentially in a crime, because all he needed to know is that what he's holding is a gun and that he was a felon. If you satisfy those things, the factual predicate has been met, the government has met its burden. And so these arguments that self-defense is somehow different than justification are also foreclosed by this Court's own assuming without deciding type case law on justification. So if you look at cases we've cited in our brief that involve or that address this question, Stover, Redding, and Poe, each one of those defendants claimed exactly as Mr. Devery did, I only became armed when I grabbed it out of the hands of someone pointing the gun at me. Each one of those in the common language sense are arguing I acted in self-defense. But in each case, this Court addressed the framework not as a self-defense framework, but as a justification framework. And that really does always come back to why. It does not negate an element. Instead, it creates this other extra background context of saying, even though I knowingly did the thing, I am otherwise legally excused for this other reason. And it is appropriate to shift the burden there. Dixon says it is not only constitutionally appropriate or not impermissible under the Constitution, but it actually follows common law. And that is what the Court should do or should reason here in affirming the district court below. The Court has also noted, and so I will use my last point unless the Court has other questions, that the overwhelming evidence in this case shows that this entire defense was a fiction. There was significant evidence put to the jury that Mr. Devery was already armed long before these men emerged from the bar, before he followed them down the sidewalk, before he chose to voluntarily follow him down the sidewalk. So the Court doesn't even really need to get into whether or not he acted recklessly and negligently in following them. He was already armed. A witness who observed the shooting, not the witness that the defense complaints had bias or had credibility issues, but an unbiased witness who was on the sidewalk at the time, said when the shooting broke out, these parties were far apart. There never was a proximity that would have allowed for this gun-grabbing fiction. Then there is the other witness on the sidewalk who the jury was entitled to assess credibility, and he testified very unequivocally. In that moment that is captured on surveillance footage, as I walked by with Mr. Devery's hands visibly down his pants holding something, with my own eyes I saw that what he was holding was a gun, and he flashed it to me. And then he pursued down the sidewalk. He pulled the gun first. He was the initial shooter. There was also the surveillance footage itself. And so the jury had significant evidence establishing that it really did not need to even turn to this justification defense at all, and yet in an abundance of caution, the government simply negotiated with the court, here's what the framework would be if a defense applied, if any juror wanted to give any weight to Mr. Devery's claims. And so that instruction properly allowed them the opportunity, but there was significant evidence that supported their conviction. And so if this court were persuaded a different burden should have applied, it should find that it was harmless error and that the overwhelming evidence supported Mr. Devery's conviction. Unless the Court has any other questions, we will rest there and on our briefing with the exception of a letter to Layal Lahey. We don't need it. I went too fast. Lahey's in the defendant's table.  Thank you, Your Honor. I've got it. I've got it. My colleagues obviously do. Thank you. We ask the Court to affirm the conviction below. Thank you. For Rebubble? Thank you. We talked about Lahey with the government and I'd note that in footnote seven in Lahey the Court noted that the defendant, quote, readily conceded that he knowingly possessed the firearm. So there the mens rea issue was not really an issue. The defendant had conceded it. In this Court we have instruction on how to deal with the self-defense context. In Greer, 2023, this Court said that self-defense is a basic right. In 2024, this Court in Davidson said that it's different than other defenses because it's the government's burden. Here the government's arguments rely on its own determinations about credibility, which is not a basis for this Court to affirm. The Court here should vacate the sentence and remand with instructions to apply the correct burden of proof. Thank you. Thank you, counsel.